UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:20-CV-00170-HBB

**MELVA COOK**                                                                                           **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI, ACTING COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION**[1]                              **DEFENDANT**

## MEMORANDUM OPINION
## AND ORDER

Before the Court is the complaint (DN 1) of Melva Cook ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 16) and Defendant (DN 23) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **REVERSED**, judgment is **GRANTED** for Plaintiff, and this matter is remanded, pursuant to sentence four of 42 U.S. C. § 405(g), with instructions to consider additional evidence and conduct additional proceedings to remedy a defect in the original proceedings.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 14). By Order entered April 26, 2021 (DN 15), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

---

1 Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted as the defendant in this suit.

FINDINGS OF FACT

On March 31, 2017, Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income (Tr. 17, 823-29).[2] Plaintiff alleged that she became disabled on March 29, 2017, as a result of stage three triple negative breast carcinoma, high blood pressure, depression, and anxiety (Tr. 17, 665, 675, 687, 700, 842). Both applications were denied initially on June 7, 2017, and upon reconsideration on September 15, 2017 (Tr. 17, 685, 686, 713, 714). Plaintiff then filed a written request for a hearing on October 10, 2017 (Tr. 17, 737-38).

On April 1, 2019, Administrative Law Judge Jennifer B. Thomas ("ALJ") conducted a video hearing from Nashville, Tennessee (Tr. 17, 616). Plaintiff and her counsel, Sara J. Martin Diaz, participated from Owensboro, Kentucky (Id.). Kenneth Boaz, an impartial vocational expert, testified during the hearing (Id.).

In a decision dated May 17, 2019, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 17-28). The ALJ noted that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017 (Tr. 19). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged onset date of March 29, 2017 (Id.). At the second step, the ALJ determined that Plaintiff has the following severe impairments: breast cancer, lymphedema, post chemotherapy neuropathy, and depression (Tr. 20). The ALJ also determined that Plaintiff's hypertension is a "non-severe" impairment within the meaning of the regulations (Tr. 21). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Id.).

---

2 A copy of Plaintiff's application for Supplemental Security Income is not included in the record.

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except she can occasionally climb ramps or stairs but never climb ladders, ropes, or scaffolds; she can occasionally stoop, kneel, crouch, or crawl; she can frequently reach overhead in all directions, handle, and finger with the upper extremities; she can never work around moving mechanical parts or unprotected heights; she can understand, remember, and carryout simple routine tasks; she can maintain concentration, persistence, and pace for two-hour periods in an eight-hour workday; she can occasionally interact with supervisors, coworkers, and the public; and she can adapt to simple workplace situational changes (Tr. 23). Additionally, the ALJ determined that Plaintiff has been unable to perform any past relevant work since the alleged onset date of March 29, 2017 (Tr. 26).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience, as well as testimony from the vocational expert (Tr. 26-27). The ALJ found that prior to April 25, 2019, Plaintiff was a younger individual and there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed (Id.). On April 25, 2019, Plaintiff's age category changed to an individual closely approaching advanced age, and there are no jobs that exist in significant numbers in the national economy that Plaintiff could perform (Tr. 27). Therefore, the ALJ concluded that Plaintiff was not disabled prior to April 25, 2019 but became disabled on that date and has continued to be disabled through the date of the decision (Id.).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 820). The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); <u>Cotton v. Sullivan</u>, 2 F.3d 692, 695 (6th Cir. 1993); <u>Wyatt v. Sec'y of Health & Human Servs.</u>, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. <u>Landsaw v. Sec'y of Health & Human Servs.</u>, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." <u>Cotton</u>, 2 F.3d at 695 (quoting <u>Casey v. Sec'y of Health & Human Servs.</u>, 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." <u>Cohen v. Sec'y of Health & Human Servs.</u>, 964 F.2d 524, 528 (6th Cir. 1992) (quoting <u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; <u>Cline v. Comm'r of Soc. Sec.</u>, 96 F.3d 146, 148 (6th Cir. 1996); <u>Cotton v. Sullivan</u>, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the RFC to return to his or her past relevant work?

5) Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step. Essentially, Plaintiff challenges the ALJ's RFC determination at step four and related vocational findings at step five.

Finding Nos. 5, 10, 12, 13

1. Arguments of the Parties

Plaintiff argues, "The ALJ did not rely on substantial evidence in finding [Plaintiff] not disabled between March 29, 2017 and April 25, 2019 because the ALJ failed to consider evidence of absenteeism due to aggressive cancer treatment in evaluating her [RFC]" (DN 16-1 PageID # 3890). Plaintiff explains, during this time frame, she would have required numerous absences from work as she underwent her most significant treatment for cancer which included: four two-week cycles of chemotherapy between April 19, 2017 and June 9, 2017; a mastectomy and axillary sentinel node biopsy on August 11, 2017; surgical removal of lymph nodes; nine different infusion treatments; five weekly radiation sessions beginning January 24, 2018; treatment for chemo and radiation related fatigue, dizziness, tingles, and numbness; and occupational therapy for lymphedema from April 24, through July 16, 2018 (Id. at PageID # 3890, 3895-99) (citing Tr. 1103, 1600-17, 1634, 1667, 1953, 1969-98, 2255-72, 2610-80). Additionally, during this two-year period, Plaintiff had more hospital stays and doctor's appointments than any other time frame (Id.) (citing Tr. 1508). Plaintiff asserts, the ALJ did not consider this evidence in terms of the level of absenteeism despite uncontradicted vocational expert testimony indicating that two or more absences a month from work would have rendered Ms. Cook unemployable during the relevant period (Id.). Plaintiff believes if the ALJ considered the uncontradicted evidence of intolerable absenteeism, she would have certainly assigned an RFC that found Plaintiff incapable of full-time work as of March 29, 2017 and issued a fully favorable decision (Id.).

Defendant contends the ALJ concluded the record as a whole did not support a limitation for two or more absences from work per month after reasonably considering the objective and opinion evidence of record and conducting a subjective symptom assessment (DN 23 PageID # 3921-26) (citing Tr. 23-25). The ALJ explained why she found persuasive the December 2018 opinion of Plaintiff's treating oncologist, Dr. Ryan J. Abel, which indicated Plaintiff light or sedentary work (Tr. 25) (quoting Tr. 3032). Further, the ALJ explained why she found unpersuasive the opinions of Drs. Maheshwari and McKindles specifying that Plaintiff was unable to work (Id. at PageID # 3922-25). Moreover, Defendant contends the ALJ reasonably considered Plaintiff's subjective symptoms and her not being fully compliant with her physical therapy program (Id. at PageID # 3925-26). Additionally, Defendant asserts the ALJ reasonably found Plaintiff was not disabled until April 2019 (Id. at PageID # 3926-28).

2. Applicable Law

The RFC determination is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c). The Administrative Law Judge makes this finding based on a consideration of medical source statements and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.929, 416.945(a)(3), 416.946(c). Thus, in making the RFC determination, the Administrative Law Judge must evaluate the persuasiveness of the medical source statements in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a), 416.920c, 416.929(a).

The new regulations for evaluating medical opinions are applicable to Plaintiff's case because she filed her applications after March 27, 2017 (Tr. 17, 823-29). The new regulations

explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[3] in the record, even if it comes from a treating medical source. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[4] Instead, Administrative Law Judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b). The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).[5] Of these five factors, the two most important are supportability and consistency. 20 C.F.R. §§ 404.1520c(a) and (b)(2), 416.920c(a) and (b)(2). Further, the regulation requires Administrative Law Judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Notably, under the regulations Administrative Law Judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

In assessing a claimant's subjective allegations, Administrative Law Judges apply the two-part test set forth in Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir.

---

[3] At the initial and reconsideration levels State agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings." 20 C.F.R. §§ 404.1513a(a)(1), 416.913a(a)(1). Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation. 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

[4] The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

[5] In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3)(i)-(v); 416.920c(c)(3)(i)-(v).

8

1986). First the Administrative Law Judge must examine whether there is objective medical evidence of an underlying medical condition. If there is, then the Administrative Law Judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." Id. When the reported pain and other symptoms suggest an impairment or impairments of greater severity than can be shown by objective medical evidence, the Administrative Law Judge should consider other information and factors such as daily activities, frequency of treatment, inconsistencies in the evidence, and medication prescribed which may be relevant to the degree of pain alleged. 20 C.F.R. §§ 404.1529(c)(3) and (4), 416.929(c)(3) and (4).

    3. Discussion

In conjunction with the severe impairment determination in Finding No. 3, the ALJ acknowledged the medical evidence concerning the March 2017 diagnosis of Plaintiff's breast cancer; the chemotherapy treatment rendered by Dr. Maheswari from April through June 2017; the August 11, 2017 mastectomy, sentinel lymph node biopsy, reconstruction of the left breast, and post-surgery recovery; and the 12 additional rounds of chemotherapy that Plaintiff received because the pathology results confirmed adenocarcinoma with one lymph node positive for metastasis (Tr. 20). The ALJ also recognized that the radiation oncologist, Dr. Abel, recommended a five-week course of radiation followed by a one-week boost to the resection cavity (Id.). The ALJ noted that Plaintiff completed the radiation therapy on March 14, 2018 (Id.).

The ALJ also acknowledged: Plaintiff's subjective complaints and diagnosis of chemotherapy-induced neuropathy during a follow up office visit with Dr. Maheshwari on

December 11, 2017; the diagnosis of chemotherapy-induced neuropathy; Plaintiff's subjective complaints during a follow up visit with Dr. Able on April 16, 2018, which included bilateral neuropathic pain, fatigue she rated as "7/10", and following the surgery Plaintiff's difficulty lifting her left arm; an April 24, 2018 occupational therapy evaluation related to lymphedema which revealed left upper extremity and truncal edema, decreased strength in the left upper extremity, decreased left shoulder range of motion, and that Plaintiff's fatigue was rated as level 7, or extreme; Plaintiff's office visit with Dr. Maheshwari on January 28, 2019 which included Plaintiff's continued complaints of neuropathy, aches, and pains, and low energy; and a February 26, 2019 neurology evaluation by Dr. Donna Lorenzo-Bueltel that focused on neuropathy in Plaintiff's feet and hands bilaterally (Tr. 20-21).

At step four, in connection with the RFC determination, the ALJ concisely described Plaintiff's testimony about numbness in her feet and fingers and lymphedema that affects the strength and range of motion of Plaintiff's upper extremities (Tr. 23). Additionally, the ALJ encapsulated Plaintiff's testimony about being limited to doing chores for 15 to 20 minutes at a time before having to sit down and put up her feet for 20 minutes (Id.). The ALJ also acknowledged Plaintiff's complaints about difficulty sleeping, being forgetful, and her medications causing drowsiness (Id.).

The ALJ found Plaintiff's subjective statements about the intensity, persistence, and limiting effects of her symptoms inconsistent with the record as a whole (Id.). The ALJ then explained as follows:

> Since completing her treatment, there has been no evidence of recurrent disease. Treatment notes by Dr. Maheshwari and Dr. Nebel consistently noted that the claimant was doing well (Exhibit 13F, 14F). On February [28], 2018, Dr. Nebel noted that the

> claimant seemed to be doing well and had a lot of energy (Exhibit 14F). Additionally, physical examinations have been largely within normal limits. For example, physical examination on December 11, 2017, revealed no anemia, no edema, normal range of motion, no tenderness, and no lymphadenopathy (Exhibit 13F). The claimant was advised to treat her lymphedema with a home exercise plan, compression garments, and a compression pump (Exhibit 34F). However, on February 26, 2019, the claimant returned to occupational therapy with complaints of increased tightness in the left upper extremity. She admitted that she had not been compliant with the compression pump nor her home exercise program. The claimant also reported that she enjoyed going to concerts with her daughter and riding the motorcycle with her significant other. Treatment records from the claimant's most recent examination on February 26, 2019, noted that physical examination showed no edema, normal muscle bulk and tone, normal sensation, and normal gait (Exhibit 35F). The claimant was able to heel, toe, and tandem walk.

(Tr. 23-24). But, for the reasons provided below, the ALJ's findings concerning Exhibits 13F and 14F appear to be based on isolated comments instead of the overall character or nature of what is set forth in Exhibits 13F and 14F, which are treatment notes respectively prepared by Dr. Maheshwari the oncologist (Tr. 1635-1772) and Dr. Nebel the surgeon (Tr. 1773-1869). Further, the ALJ's assessment of Exhibit 34F (Tr. 3781-3810) seems to ignore the occupational therapy records addressing Plaintiff's lymphedema in 2017 to 2018. Additionally, the ALJ's findings concerning the February 26, 2019 treatment note prepared by Dr. Lorenzo-Bueltel focus on a small portion of the information in Exhibit 35F (Tr. 3781-3814).

Focusing on Dr. Maheshwari's treatment notes in Exhibit 13F, the ALJ turns a blind eye to the doctor's comments addressing difficulties such as fatigue, borderline cardiomegaly, acute thrombus distending and occluding the right jugular vein, anemia, pain, the tingling/numbness, and persistent back pain that Plaintiff experienced as a result of enduring numerous cycles of chemotherapy between April 2017 and December 2017 (*see* Tr. 1636, 1640, 1641, 1649, 1654,

1663, 1667-68, 1674-75). While the ALJ has accurately described some of the examination findings on December 11, 2017, the ALJ failed to mention that Dr. Maheshwari's assessment included anemia due to chemotherapy, lymphedema, and chemotherapy-induced neuropathy (Tr. 1679). The ALJ also seems to have ignored Dr. Maheshwari's January 2018 treatment note confirming Plaintiff being "[p]ositive for fatigue" (Tr. 1690). This omission is significant because by this point in time, Plaintiff had begun the robust radiation therapy.

Focusing on Exhibit 14, the ALJ ignores Dr. Nebel's Friday, June 2, 2017 operative notes discussing removal of the right internal jugular Port-A-Cath—through which Plaintiff was receiving her chemotherapy—and heparin therapy to address Plaintiff's "extensive" deep venous thrombosis manifested in acute neck and arm swelling and pain (Tr. 1839-40). Nor did the ALJ mention that Plaintiff remained hospitalized until after receiving her chemo dose on Monday, June 5, 2017 (Tr. 1840). The ALJ also failed to acknowledge that the August 2017 biopsy revealed a lymph node with a 7 mm metastatic carcinoma tumor (Tr. 1854). Further, in discussing the February 28, 2018 treatment note, the ALJ did not mention the "review of systems" comments: "[s]ome joint pain, weakness, back pain, and some neuropathy due to chemotherapy, some change in bowel habits, some fatigue, some weight gain, depression, history of easy bruisability, blood clot, anemia and insomnia" (Tr. 1825). Also, in the February 28, 2018 treatment note, Dr. Nebel observed that Plaintiff had begun radiation therapy and had "about 10 more treatments to go" (Id.). Thus, the ALJ failed to recognize that the findings she relied on would have been brief in duration as Plaintiff was in the early stages of the robust radiation therapy administered by Dr. Abel.

Returning to the ALJ's RFC determination, the ALJ found the opinions of Drs. Maheshwari and McKindles as well as the opinions of the state agency medical consultants to be unpersuasive

(Tr. 24-25). Dr Maheshwari, in a letter dated May 3, 2018, stated, "It is my medical opinion that [Plaintiff] should remain out of work until further notice, as she is recovering from chemotherapy and surgery" (Tr. 1634). The ALJ found the opinion "not persuasive" because it was not supported by objective medical evidence of Plaintiff's limitations and did not provide specific functional limitations (Tr. 24). The ALJ also relied on a March 30, 2018 treatment to conclude the May 3, 2018 opinion was not consistent with physical examination findings and exertional limitations expressed in Dr. Maheshwari's own treatment records (Id.). Specifically, the ALJ indicated, "Dr. Maheshwari further noted . . . that [Plaintiff's] performance status was one, indicating that she was restricted in physically strenuous activity, but able to carry out work of a light or sedentary nature" (Id.). But the ALJ's characterization of Dr. Maheshwari's March 30, 2018 treatment note is not accurate. At no place in the March 30, 2018 treatment note did Dr. Maheshwari make such a determination (Tr. 1699-1708). Further, the doctor's findings on physical examination do not provide a sound factual basis for the ALJ to conclude that on March 30, 2018, Plaintiff had the exertional capacity to perform light or sedentary work on a full-time basis (Tr. 1704). Moreover, in assessing the persuasiveness of Dr. Maheshwari's May 3, 2018 opinion, the ALJ ignored the fact that less than two months earlier Plaintiff completed the robust radiation treatment (Tr. 24). Thus, substantial evidence does not support the ALJ's persuasiveness finding as to Dr. Maheshwari's opinion.

On December 31, 2018, Plaintiff had a fifteen-minute office visit with Dr. Abel (Tr. 3022-33). At that time, Dr. Abel rated Plaintiff's "ECOG Performance Status: 1 – Restricted in physically strenuous activity but ambulatory and able to carry out work of a light or sedentary nature, e.g., light house work, office work" (Tr. 3032). Yet Dr. Abel also rated Plaintiff's

13

"Fatigue Level: 7 – Extreme fatigue" (Id.). The ALJ found Dr. Abel's "opinion persuasive that [Plaintiff] could perform light or sedentary work to be persuasive because it is supported by objective examination findings showing only mild tenderness and scant edema" and it "is consistent with the evidence of [Plaintiff's] residual effects from chemotherapy (Tr. 25). In making the above findings, the ALJ ignored Dr. Abel's opinion concerning Plaintiff's "fatigue level" which would have a significant impact on Plaintiff's capacity to perform light or sedentary work on a full-time basis. Obviously, the two opinions are inconsistent with one another. For this reason alone, the ALJ's persuasiveness finding cannot be supported by substantial evidence. Equally concerning is the ALJ turning a blind eye to the fact that Dr. Abel rendered this opinion before Plaintiff began the robust radiation treatment that was not completed until March 14, 2018 (Tr. 20, 25, 3032). Obviously, Dr. Abel's opinion is limited to Plaintiff's condition before starting the radiation treatment. It does not address Plaintiff's condition during the treatment or in the months following treatment.

In sum, the Court has identified two disturbing instances where substantial evidence does not support the ALJ's persuasiveness findings concerning medical opinions addressing Plaintiff's physical condition. These errors cannot be considered harmless because the ALJ's RFC finding is substantially impacted by these persuasiveness findings.

Starkly absent from the physical RFC analysis is any indication the ALJ considered—during the time frame March 2017 through April 2018—how many days each month Plaintiff received chemotherapy, infusions, radiation therapy, and attended follow up office visits related to those treatments (Tr. 20-25). Also patently missing from the decision is any assessment of the number days each month—during the time frame March 2017 through April 2018—that Plaintiff's

level of daily activity was entirely or substantially impaired due to her recovering from the chemotherapy, infusions, and radiation treatments (Id.). Nor is there any suggestion that the ALJ considered how many days were impacted—during the time frame March 2017 through April 2018—by the mastectomy and axillary sentinel node biopsy, removal of the lymph nodes, Plaintiff's recovery time thereafter, and follow up office visits related to those surgical procedures and the lymphedema related thereto (Id.). As Plaintiff aptly points out, the significance of the ALJ's omissions is apparent from the vocational expert's testimony indicating that two days or more of absences each month would preclude all work (Tr. 662-63). Yet there is no indication the ALJ considered whether Plaintiff qualified for a closed period of disability during the time frame March 2017 through April 2018.

Equally disturbing, there is no indication in the decision that the ALJ considered how many days each month—during the time frame April 2018 through April 2019—Plaintiff's level of daily activity was entirely or substantially impaired by the long term recovery from the energy draining chemotherapy and radiation therapies. Nor is there any indication the ALJ thought about the frequency of the follow up office visits and lymphedema therapy. Again, as Plaintiff aptly points out, the significance of the ALJ's omissions is apparent from the vocational expert's testimony indicating that two days or more of absences each month would preclude all work (Tr. 662-63).

Plaintiff has demonstrated, and the undersigned finds, that the ALJ in making the physical RFC determination failed to consider the consuming nature of the treatment and recovery during the time frame March 2017 through April 25, 2019. Considering the vocational expert's testimony, this omission is not harmless.

"A district court's authority to remand a case . . . is found in 42 U.S.C. § 405(g) . . . ." Hollon ex rel. Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 482-83 (6th Cir. 2006). Sentence four of 42 U.S.C. § 405(g) authorizes a post judgment remand. Under sentence four, the court makes a final judgment (e.g., affirming, reversing, or modifying the final decision of the Commissioner) and remands the case to the Commissioner with instructions to consider additional evidence and/or conduct additional proceedings to remedy a defect in the original proceedings. Faucher v. Sec'y of Health & Hum. Servs., 17 F.3d 171, 175 (6th Cir. 1994). For the reasons set forth above, the final decision of the Commissioner is reversed and this matter is remanded, pursuant to sentence four of § 405(g), with instructions to consider additional evidence and conduct additional proceedings to remedy a defect in the original proceedings.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **REVERSED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for Plaintiff.

**IT IS FURTHER ORDERED** that this matter is remanded, pursuant to sentence four of 42 U.S.C. § 405(g), with instructions to consider additional evidence and conduct additional proceedings to remedy a defect in the original proceedings.

March 22, 2022

H. Brent Brennenstuhl
United States Magistrate Judge

Copies:    Counsel